## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IMPULSE IMPORTS d/b/a IMPORT ) <br> IMAGES, PYRAMID POSTERS ) <br> LIMITED, FIFTY-SIX HOPE ROAD ) <br> MUSIC, LTD., SHEFFIELD ) <br> ENTERPRISES, INC., LIONS GATE ) <br> ENTERTAINMENT, INC., ARTISAN ) <br> PICTURES, INC., JAMES DEAN, INC., ) <br> JAMES DEAN FOUNDATION, ) <br> ANTHILL TRADING LTD, LLC, ) <br> PEARL JAM, LLC, END OF MUSIC, ) <br> LLC, RADIOHEAD TRADEMARK ) <br> LIMITED CORP., ORION PICTURES ) <br> CORP., a subsidiary of METRO- ) <br> GOLDWYN-MAYER, INC., ) <br> UNIVERSAL STUDIOS, INC., and ) <br> MUSEUM MASTERS ) <br> INTERNATIONAL, a division of ) <br> ARTMERCHANDISING & MEDIA, ) <br> INC., ) <br> ) <br>     Plaintiffs ) <br> v. ) <br> ) <br> GLOBAL PRINTS, INC. d/b/a CAMPUS ) <br> SALES and PAUL KENNEDY, ) <br> Individually and as Officer, Director, ) <br> Shareholder and employee of ) <br> GLOBAL PRINTS, INC., ) <br>     Defendants. ) | Civil Docket No. <br><br> MAGISTRATE JUDGE _____ <br><br><br> RECEIPT # _____ <br> AMOUNT $_____ <br> SUMMONS ISSUED_____ <br> LOCAL RULE 4.1_____ <br> WAIVER FORM _____ <br> MCF ISSUED_____ <br> BY DPTY. CLK._____ <br> DATE_____ |

## COMPLAINT

### I.   Introduction:

1.     The Plaintiffs in this action are the holders of certain intellectual property rights in and to various musical artists, entertainers, artists, photographers and the holder of rights in and to certain feature films, and/or other protectable intellectual property, including the rights to use the intellectual property on merchandise, including posters.  This action comprises claims

commenced by these entities against Global Prints, Inc. d/b/a Campus Sales and Paul Kennedy

(collectively "Defendants") for the following: 1) trademark infringement and federal unfair

competition under the Lanham Act, 15, U.S.C. §§ 1114, 1125(a); 2) infringement and unfair

competition under 15 U.S.C. §1125 (a); 3) copyright infringement arising out of the unlawful use

of certain copyrighted photographs, in violation of the exclusive rights of the copyright holders

under Section 106 of the Copyright Act of 1976, Title 17, United States Code; 4) infringement of

the Common Law Right of Publicity and Commercial Appropriation of Celebrity Identity; and 5)

common law trademark infringement, arising out of the Defendants' unauthorized manufacture,

advertisement and sale of posters.

## II.    Parties:

2.      The Plaintiff, Impulse Imports d/b/a Import Images ("Impulse" and collectively

with all other plaintiffs as "Plaintiffs") is a Corporation duly organized and existing under the

laws of the State of New York, having a principal place of business at 1903 West Main Street,

Stroudsburg, Pennsylvania.    Impulse has been doing business under the trade name Import

Images in New York since 1994, with offices located at 511 Sixth Avenue, New York, New

York. Impulse is a leading publisher of licensed posters and related articles and has entered into

licensing agreements authorizing Impulse to manufacture and sell posters and prints of various

musical artists, famous photographs, feature films, and other entertainment images to retail and

wholesale establishments, including licenses with the other Plaintiffs herein.

3.      The Plaintiff, Pyramid Posters Limited ("Pyramid" and collectively with all other

plaintiffs as "Plaintiffs") is a private limited company organized under the laws of the United

Kingdom, having a principal place of business at The Works, Park Road, Blaby, Leicester,

Leicestershire, United Kingdom.    Pyramid is an internationally renowned publisher of posters

2

and related articles and has entered into licensing agreements authorizing it to manufacture and sell posters and prints of various musical artists, famous photographs, feature films, and other entertainment images to retail and wholesale establishments, including licenses with the other Plaintiffs herein.

4.     The Plaintiff, Fifty Six Hope Road Music Ltd. ("Hope Road" and collectively with all other plaintiffs as "Plaintiffs") is a corporation existing under the laws of the Commonwealth of Bahamas, having a principal place of business at Aquamarine House, Cable Beach, Nassau, Bahamas. Hope Road is the exclusive holder of the intellectual property rights for the late great reggae performer, Robert Nesta Marley a/k/a Bob Marley ("Marley" or "Marley Rights"). Prior to his death, Marley was a singer and performer who gained worldwide renown for his image, name, likeness, music and performances. For many years before his death, Marley worked diligently to become and became an extremely successful songwriter, vocalist, musician, and recording artist. Hope Road is the owner of federal trademark registration for the name Bob Marley, Registration no. 2,349,361 listed on the Principal Register with the United States Patent and Trademark office and the holder of a state trademark registration issued by the Commonwealth of Massachusetts as Registration No. 724364. A true copy of the Federal Registration is annexed hereto as Exhibit "A1", the Massachusetts Registration is annexed as Exhibit "A2."

5.     The Plaintiff, Sheffield Enterprises, Inc. (hereinafter "Sheffield" and collectively with all other plaintiffs as "Plaintiffs") is a corporation existing under the laws of the state of Tennessee, having a principal place of business at 9350 Wilshire Blvd., Suite 200, Beverly Hills, California. Sheffield is the holder of certain intellectual property rights for the late legendary entertainer Frank Sinatra, Jr., including trademark registrations in and to the name Frank Sinatra,

3

Frank Sinatra, Jr. and Sinatra, Registration Nos. 1,311,514, 1,313,931, 1,817,035, and 2547088 listed on the Principal Register with the United States Patent and Trademark office A true copy of the Registrations are annexed hereto collectively as Exhibits "B1", "B2", "B3" and "B4." Sheffield further is the holder of the rights to publicity in and to Frank Sinatra.

6.     The Plaintiff, Artisan Pictures, Inc. ("Artisan" and collectively with all other plaintiffs as "Plaintiffs") is a corporation existing under the laws of Delaware, having a principal place of business at 2700 Colorado Avenue, Santa Monica, California. Artisan is affiliated with Artisan Entertainment, Inc. which holds the exclusive trademark rights to images from the major motion picture theatrical release "Reservoir Dogs." Artisan is the owner of federal trademark registration for the mark Reservoir Dogs, Registration No. 2,640,668 listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registration is annexed hereto as Exhibit "C."

7.     The Plaintiff, Lions Gate Entertainment, Inc. ("Lions Gate" and collectively with all other plaintiffs as "Plaintiffs") is a corporation existing under the laws of Delaware, having a principal place of business at 2700 Colorado Avenue, Santa Monica, California. In 2003, Lions Gate acquired Artisan. As a result of this acquisition, Lions Gate now holds the exclusive trademark rights to images from the major motion theatrical release "Reservoir Dogs."

8.     The Plaintiff, James Dean, Inc. ("Dean, Inc." and collectively with all other plaintiffs as "Plaintiffs") is a corporation existing under the laws of the State of Indiana, having a principal place of business at 7184 S. 150 E. Street, Jonesboro, Indiana. James Dean was an actor who became famous for his roles in three major movie theatrical releases: "East of Eden", "Giant" and "Rebel Without a Cause", and who came to symbolize and personify the restless

4

American youth of the 1950's. Dean Inc. holds certain intellectual property rights to use the image, name, likeness, signature and voice of James Dean ("Dean Rights").

9.      The Plaintiff, James Dean Foundation ("Dean Foundation") is a trust organized under the laws of the State of Indiana, having an address of 1000 Waterway Boulevard, Indianapolis, Indiana. The Dean Foundation is the owner of a formally registered trademark for the name James Dean, Registration no. 1,482,284 listed on the Principal Register with the United States Patent and Trademark office and is the holder of the common law trademark rights. A true copy of the expired Registration is annexed hereto as Exhibit "D."

10.     The Plaintiff, Pearl Jam, LLC ("Pearl Jam" and collectively with all other plaintiffs as "Plaintiffs") is a limited liability company organized under the laws of the State of Washington, having a principal place of business at 969 Thomas Street, Seattle, Washington. Pearl Jam is the owner of federal trademark registrations for the name Pearl Jam, Registration numbers 1,911,387, 1,916,938 and 2,933,291listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registration is annexed hereto as Exhibit "E1", "E2" and "E3."

11.     The Plaintiff, Anthill Trading, Ltd. LLC ("Anthill" and collectively with all other plaintiffs as "Plaintiffs") is a limited liability company organized under the laws of the State of New York, having a principal place of business at 126 5th Avenue, New York, New York. Anthill holds certain licensed intellectual property rights for products bearing images, likenesses, designs, characters, artwork and symbols associated with various artists and bands, including Pearl Jam and the musical performer Gordon Matthew Sumner, professionally known as Sting.

12.     The Plaintiff, Radiohead Trademark Limited Corporation ("Radiohead") is a private limited company organized under the laws of the United Kingdom, having a principal

place of business at 142 Cavendish Street, 4th Floor, London W1W 6YF, United Kingdom. Radiohead holds a federal trademark registration for the word mark Radiohead, Registration number, 2,158,467 listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registration is annexed hereto as Exhibit "F." Radiohead is a popular international alternative music group.

13.     The Plaintiff, End of Music, LLC ("End of Music" and collectively with all other plaintiffs as "Plaintiffs") is a limited liability company organized under the laws of California, having a principal place of business at 15250 Ventura Blvd, Sherman Oaks, California. End of Music holds federal trademark registration for the word mark Kurt Cobain ("Cobain"), Registration numbers 2,312,223 and 2,312,224 listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registrations are annexed hereto as Exhibit "G1" and "G2." Cobain is the late lead singer of the alternative rock group, Nirvana, which is famed for introducing and popularizing the "grunge" movement of American music in the 1990's.

14.     The Plaintiff, Orion Pictures, Inc. ("Orion" and collectively with all other plaintiffs as "Plaintiffs") is a corporation organized under the laws of Delaware, having a principal place of business at 10250 Constellation Blvd., Los Angeles, California. Orion is a subsidiary of Metro-Goldwyn-Mayer, Inc. ("MGM" and collectively with all other plaintiffs as "Plaintiffs"), a corporation organized under the laws of Delaware, having a principal place of business at 10250 Constellation Blvd., Los Angeles, California. Orion holds a federal trademark registration for the word mark "Army of Darkness," listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registration is annexed hereto as Exhibit "H".

6

15. The Plaintiff, Museum Masters International ("Museum Masters" and collectively with all other plaintiffs as "Plaintiffs") is a division of ArtMerchandising & Media, Inc. ("ArtMerchandising" and collectively with all other plaintiffs as "Plaintiffs"), which is a corporation organized under the laws of New York, with a principal place of business at 26 East 64th Street, New York, New York. ArtMerchandising is an authorized licensing and collection agent for Demart Pro Arte B.V. which represents the Estate of Salvador Dali and the holder of trademark registrations and applications in the word mark Salvador Dali ("Dali") Registration number 2,204,768 listed on the Principal Register with the United States Patent and Trademark office. A true copy of the Registration is annexed hereto as Exhibits "I."

16. The Plaintiff, Universal Studios, Inc. formerly known as Universal City Studios, Inc. ("Universal" and collectively with all other plaintiffs as "Plaintiffs") is a corporation organized under the laws of Delaware, having a principal place of business at 100 Universal City Plaza, Universal City, California. As described more fully herein, Universal is the holder of certain copyrights in and to the movie poster "Army of Darkness," the copyright holder in and to the movie poster for the feature film "Carlito's Way," starring Al Pacino.

17. Upon information and belief, the Defendant, Global Prints, Inc. d/b/a Campus Sales ("Global" and collectively with all defendants as "Defendants") is a Massachusetts Corporation with a principal place of business located at 71 Amory Street, Boston, Massachusetts.

18. Upon information and belief, Defendant, Paul Kennedy ("Kennedy" and hereinafter collectively referred to with all other defendants as "Defendants") is an individual residing at 203 Centre Street West, Roxbury, Commonwealth of Massachusetts and is the owner, proprietor, director, officer, shareholder, and operator of Global.

7

**III.    Jurisdiction and Venue:**

19.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1338.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. §1400 (a).

**IV.    Facts Common to All Counts:**

21.    The Plaintiffs repeat and re-allege each of the allegations set forth in Paragraphs 1-20 as if fully set forth herein.

22.    In or about July of 2004, Patrick Smith ("Smith") the Chief Executive Officer of Import Images learned from several industry contacts that Global Prints, a vendor of Import Images, was allegedly selling bootleg or unauthorized posters along side licensed posters.

23.    As a result of receiving this information, in or about the fall of 2004, Smith learned that Global would be maintaining a sales tent on the campus of Boston College.  In or about September 2004, Smith traveled to the Boston College campus from New York to determine whether any of the posters being sold at the sales tent by Global were infringing.

24.    Global was offering for sale both licensed and unlicensed posters at its booth and Smith located and purchased approximately (20) twenty unlicensed posters from Global Prints. Because of his familiarity with Impulse's licensed products and based upon his experience in the poster business, Smith was easily able to determine that the posters that he purchased infringed upon licenses held by Impulse or other poster companies that Smith was aware held such rights. As a result, Global was subsequently contacted by Import Images and by other intellectual property holders and warned about the actions of infringement.  Global agreed with Impulse and Pyramid that it would cease all infringing activities and distribute only licensed product.

8

25.    Notwithstanding the verbal agreements, in or about August 2005, Smith learned
that Global was operating a sales tent next to the Prudential Center in Boston; and Smith had
once again been informed from industry contacts that Global was continuing to offer for sale
unauthorized prints and was further actively marketing and promoting the upcoming sales of
Global posters at various college campuses throughout the United States.

26.    On or about August 4, 2005, Smith traveled to Boston and located the Global
Prints tent adjacent to the Prudential Center.  Smith observed that Global was once again offering
for sale a mixture of both licensed and unlicensed designs.  Smith purchased numerous posters
from Global that infringed upon licenses held by Impulse or poster companies that Smith was
aware held such rights, all of which are Plaintiffs in this action.

27.    Defendants are aware that they do not have any right to manufacture, distribute or
sell any unlicensed products in violation of others' intellectual property rights and further
Defendants have previously been warned to cease their infringing activities.

28.    Defendants' continued sale, distribution and manufacture of Infringing Products
bearing and/or depicting the Plaintiffs' protected intellectual property constitutes actionable
infringement.

## V.    Claims:

### COUNT I
### (Infringement of Federally Registered Mark, Lanham Act, 15, U.S.C. §§ 1114, 1125(a))

29.    The Plaintiffs repeat and re-allege each and every allegation contained in
paragraphs 1- 28 and incorporate each herein by reference.

30.    The Plaintiffs are the owners of federal trademark registrations (annexed to the
Complaint as Exhibits "A1-I") for the respective marks being depicted on the unauthorized
posters being sold by Global.

31.    The Defendants are using in commerce, without the Plaintiffs' consent,
reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' registered marks.

32.    The Defendants use of the Plaintiffs' registered trademarks is likely to cause
confusion and is in fact causing confusion, in violation of 15 U.S.C. § 1114(1)(a).

33.    Purchasers are likely to purchase Defendants' unauthorized goods bearing the
trademarks of the Plaintiffs believing they are Plaintiffs' authorized product. This is especially
true where the Defendants are selling both licensed and unlicensed posters side by side.

34.    The Plaintiffs have no control over the quality of the goods sold by the
Defendants, and because of the confusion as to the source engendered by the Defendants', the
Plaintiffs' valuable goodwill in respect to their registered trademarks will be irreparably harmed.

35.    The use by the Defendants of the respective registered trademarks on its prints
and posters has caused confusion and mistake and deception of purchasers as to the source of
origin of its goods which falsely suggest that its Infringing Products are sponsored by, licensed
by or otherwise affiliated with the Plaintiffs. These actions constitute trademark infringement
and are in violation of, inter alia 15 U.S.C. § 1114(a).

36.    Moreover, the use by Defendants of the respective registered trademarks has
resulted in the dilution of the trademark holders' exclusive rights.

37.    The infringement by the Defendants in this case has been willful and deliberate,
designed specifically to trade upon the enormous goodwill associated with Plaintiffs' registered
trademarks.

38.    The goodwill of the Plaintiffs' businesses under their respective registered
trademarks is of enormous value, and the Plaintiffs will suffer irreparable harm should
infringement be allowed to continue to the detriment of their trade reputation and goodwill.

39.     Plaintiffs have no adequate remedy at law available and are suffering and will continue to suffer irreparable harm and damage as a result of the aforesaid acts of Defendants, unless an ex-parte seizure order is granted and a preliminary injunction issued enjoining and restraining the Defendants from the manufacture, distribution, advertisement and sale of the Infringing Products.

## COUNT II
### (Infringement, False Endorsement and Unfair Competition 15 U.S.C. §1125 (a))

40.     The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-39 and incorporate each herein by reference.

41.     Over the years, the Plaintiffs have expended considerable resources in establishing themselves in the minds of customers as a source of high quality licensed products. Impulse and Pyramid are well known throughout the United States and the world as sources for authorized products, including but not limited to posters, prints and the like.

42.     The use by Defendants of the Plaintiffs' trademarks on its Infringing Products is likely to cause confusion or mistake or deception to the consuming public as to the source of origin of those goods.

43.     Purchasers are likely to purchase Defendants' goods bearing the respective trademarks believing they are Plaintiffs' authorized products.

44.     The Plaintiffs have no control over the quality of the goods sold by the Defendants, and because of the confusion as to the source engendered by the Defendants' actions, the Plaintiffs' valuable goodwill in respect to their trademarks will be irreparably harmed.

45.     The use by the Defendants of the various trademarks on its expanded product line has caused confusion and mistake and deception of purchasers as to the source of origin of its

11

goods which falsely suggest that its Infringing Products are sponsored by, licensed by or otherwise affiliated with the Plaintiffs. These actions constitute trademark infringement, false endorsement and unfair competition and are in violation of, inter alia 15 U.S.C. § 1125(a).

46.    The actions of the Defendants has been willful and deliberate, designed specifically to trade upon the enormous goodwill associated with Plaintiffs' trademarks.

47.    The goodwill of the Plaintiffs' business under their registered trademarks is of enormous value, and the Plaintiffs will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

48.    Plaintiffs have no adequate remedy at law available and are suffering and will continue to suffer irreparable harm and damages as a result of the aforesaid acts of Defendants, unless an ex-parte seizure order is issued and the Defendants are enjoined and restrained from the manufacture, distribution, advertisement and sale of the Infringing Products.

## COUNT III
## (Copyright Infringement under 17 U.S.C. §501)

49.    The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1- 48 and incorporate each herein by reference.

50.    Universal is the holder of federal copyright registrations for: 1) the movie poster entitled "Army of Darkness", Registration number VA-563-990 filed with the United States Copyright Office; 2) the movie poster entitled "Carlito's Way," Registration number VA-605-454 filed with the United States Copyright Office. True copies of the Registrations are annexed hereto as Exhibits "J" and "K" respectively.

51.    Museum Masters is the owner of federal copyright registrations for the signature of the artist, Salvador Dali, Registration numbers VA-843-121 and VAu-393-125 filed with the

12

United States Copyright Office. A true copy of the Registrations are annexed hereto as Exhibit "L" and "M" respectively.

52.    Upon information and belief, before the acts of copyright infringement complained herein, Defendants, and each of them, had access to the posters in that, among other things, they have been widely distributed in the United States in the form of posters and prints.

53.    Upon information and belief, within the past year, in this District and in other locations in the United States and its territories, Defendants and each of them, manufactured, caused to be manufactured, and/or authorized others to manufacture in the United States and elsewhere in the world, prints and posters bearing or depicting the Plaintiffs' copyrighted subject matter. Said articles are referred to as "the Infringing Posters." The Infringing Posters are also available for inspection by the Court.

54.    Upon information and belief, within the past year, in this District and in other locations in the United States and its territories, Defendants advertised, promoted, sold and distributed the Infringing Posters to the public, and/or authorized others to advertise, promote, sell and distribute the Infringing Posters to the public in the United States and elsewhere in the world.

55.    Upon information and belief, within the past year, in this District and in other locations in the United States and its territories, Defendants manufactured, reproduced, advertised, promoted, sold and distributed the Infringing Posters to the public in the United States and elsewhere in the world.

56.    Defendants' acts complained of herein have been done without any of the Plaintiffs' agreement or consent, and said acts constitute acts of copyright infringement under 17 U.S.C. § 501.

13

57.    By service of this complaint, the Plaintiffs hereby notify Defendants that their acts
and conduct constitute an infringement of its exclusive rights under copyright in the Posters and
hereby demand that they immediately cease and desist said wrongful conduct.

58.    The Plaintiffs are informed and believe, and based upon said information and
belief aver, that Defendants, have derived and received substantial profits from the wrongful and
infringing acts and conduct hereinabove averred, and that Defendants, and each of them,
continue to derive substantial profits from such wrongful and infringing conduct. The Plaintiffs
do not now know the exact amount of said profits.

59.    In addition, by reason of the wrongful conduct as hereinabove averred, the
Plaintiffs are entitled to, among other relief, an award of compensatory or statutory damages as
provided by 17 U.S.C. § 505.

60.    Upon information and belief, Defendants, and each of them, threaten and continue
to threaten to engage in the infringing acts and conduct hereinabove averred and, unless
restrained and enjoined from doing so by this Court, will continue to engage in said wrongdoing.
The Plaintiffs will sustain great and irreparable injury, which cannot be wholly and adequately
compensated or measured in monetary damages unless said infringing acts and conduct are
enjoined preliminarily pending trial and permanently after trial. The Plaintiff has no plain,
speedy or adequate remedy at law, and by reason thereof, is entitled to a preliminary and
permanent injunction pursuant to 17 U.S.C. § 502.

## COUNT IV
## (Right to Publicity)

61.    The Plaintiff repeats and re-alleges each and every allegation contained in
paragraphs 1- 60 and incorporates each herein by reference.

14

62.     Hope Road is a corporation owned, operated and controlled by the surviving children of Bob Marley.

63.     Marley died in 1981 as a domiciliary of Jamaica and his Estate was submitted for probate in Jamaica without objection. The Country of Jamaica recognizes a post-mortem right of publicity.  As a consequence, said rights in and to Marley's publicity rights, including the picture, name, photograph, likeness, image, signature and other indicia of Marley descended to Marley's children and were duly assigned to Hope Road.

64.     In addition, Sheffield Enterprises is the holder of certain intellectual property rights, including the rights to publicity, for the late legendary entertainer Frank Sinatra, Jr.

65.     Sinatra was one of the most notable and recognizable musical artists and entertainers of the 20th century.  In a career expanding over six decades, Sinatra performed countless classic favorites, including "Love and Marriage", "It Was a Very Good Year", "My Way" and "Strangers in the Night."

66.     Prior to Sinatra's death in 1998, he assigned all his interest in his intellectual property rights, including his right of publicity, to Sheffield, a Tennessee based corporation.  The state of Tennessee recognizes a post-mortem right of publicity.  Accordingly, any and all rights of publicity of Sinatra are held by Sheffield.

67.     In addition, Dean, Inc. is a corporation operated and controlled by the trustees of the Dean Foundation.

68.     James Dean died in 1955 as a domiciliary of California.  The state of California recognizes a statutory post-mortem right of publicity.  As a consequence, said rights in and to Dean's publicity rights including the picture, name, photograph, likeness, image, signature and

other indicia of Dean passed through the Dean Foundation and were duly assigned to Dean, Inc. Accordingly, any and all rights of publicity of Dean are held and controlled by Dean, Inc.

69.    In addition, End of Music, a Washington based limited liability company holds all the intellectual property rights of the late singer Kurt Cobain.    Cobain died in 1994 as a domiciliary of Washington.    The state of Washington recognizes a post-mortem right of publicity. As a consequence, said rights in and to Cobain's publicity rights including the picture, name, photograph, likeness, image, signature and other indicia of Cobain passed through the Estate of Kurt Cobain and were duly assigned to End of Music.

70.    The above-named performers gained worldwide renown for their images, name, likeness, music and/or theatrical performances.    For many years, these artists worked diligently to become and became extremely successful songwriters, vocalists, musicians, recording artists, performers and/or actors. As a consequence of their abilities and efforts, these artists created a general acceptance and good will for their names and likenesses, the effect of which was to create an absolute, incorporeal, and transferable property right with a substantial commercial value in the eyes of the public.

71.    Said rights descended upon their deaths and are now owned and controlled by the above-named respective entities. Accordingly, the Plaintiffs in this claim for relief own the valuable right of publicity in connection with the above-named performers' and entertainers' names, photographs, images, personas, likenesses and reputations.

72.    In addition to the foregoing deceased artists, Anthill Trading is the holder of certain intellectual property rights to various musical artists and performers, including Sting.

73.    Sting is a musical performer currently residing in Los Angeles, California. In the 1970's and 1980's, Sting headed the popular musical group the Police. Since the group's

16

disbanding in 1984, Sting has consistently expanded the boundaries of pop music, experimenting with jazz, classical and international music in developing his own unique sound. Sting has become a public figure known for speaking out on humanitarian issues and organizing fundraisers to combat poverty.

74.    Sting has gained worldwide renown for his image, name, likeness, music and performances. For many years, Sting has worked diligently to become an extremely successful songwriter, vocalist, musician, recording artist, and performer. As a consequence of his abilities and efforts, Sting has created a general acceptance and good will for his name and likeness, the effect of which was to create an absolute, incorporeal, and transferable property right with a substantial commercial value in the eyes of the public.

75.    The Defendants are illegally misappropriating the above-named artists' identities by using their pictures, names, images, likenesses, signatures and other indicia on products and in advertisements, catalogs and other medium related to the promotion and sale of prints, posters and other products.

76.    The Defendants are using, without the Plaintiffs' permission, identifiable aspects of the above-named artists' identities for advertising purposes and are falsely and misleadingly implying that the Plaintiffs endorse their products. The Defendants are infringing upon the right of publicity and engaging in unfair competition and falsely misleading the public that the Plaintiffs endorse the products manufactured, advertised, distributed and sold by the Defendants.

77.    Plaintiffs have no adequate remedy at law and are suffering, and unless the Defendants are enjoined, will continue to suffer irreparable harm and damages as a result of Defendants' unlawful acts. The Plaintiffs further seek injunctive and equitable relief to enjoin

17

and restrain the Defendants from continuing to sell, manufacture, advertise or distribute the Infringing Product.

78.     The wrongful acts of the Defendants set forth above have caused Plaintiffs to suffer and will continue to cause Plaintiffs to suffer damages in an amount to be determined by the trier of fact.

79.     Upon information and belief, Defendants, and each of them, knew that the Plaintiffs owned the exclusive rights to publicity and was the only entity that could authorize the use of the respective Rights of Publicity. Upon further information and belief, Defendants, and each of them, knew that they did not have the right, permission or authority from the Plaintiffs that they needed to have in order to sell, advertise and promote the sale of merchandise using the Plaintiffs' Rights.  By reason of the foregoing, the Plaintiffs are entitled to an award of exemplary damages against Defendants, jointly and severally.

80.     Upon information and belief, Defendants threaten and continue to threaten to engage in the infringing acts and conduct hereinabove averred and, unless restrained and enjoined from doing so by this Court, will continue to engage in said wrongdoing. The Plaintiffs will sustain great and irreparable injury that cannot be wholly and adequately compensated or measured in monetary damages unless said infringing acts and conduct are enjoined preliminarily pending trial and permanently after trial. The Plaintiffs have no plain, speedy or adequate remedy at law, and by reason thereof, are entitled to a preliminary and permanent injunction.

## COUNT V
### (Common Law Trade Mark Infringement)

81.    Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 -- 80 and incorporate each herein by reference.

82.    Plaintiffs' use of its licensed rights in the trademark, name, image, likeness, signature and other indicia of its products has been sufficiently extensive so that members of the public on seeing the Defendants' use of their intellectual property on posters are actually being deceived or confused and others will likely be deceived or confused and believe that Defendants' products have their origins with Plaintiffs or are sponsored by or affiliated with Plaintiffs.

81.    Plaintiffs have no adequate remedy at law and are suffering and unless Defendants are enjoined will continue to suffer irreparable harm and damage as a result of Defendants' unlawful acts.

82.    The wrongful acts of the Defendants set forth above have caused Plaintiffs to suffer and will continue to cause Plaintiffs to suffer damages in an amount to be determined by the trier of fact.

## VI.    Prayers for Relief:

A.    That the Court grant an ex-parte order authorizing the immediate seizure of any and all infringing products in the possession, custody or control of the Defendants[1];

B.    That the Court enter an order temporarily restraining the Defendants and any of their respective officers, agents, servants, vendors, employees, representatives, as well as all persons and entities acting in concert or participating with them be and hereby are temporarily restrained and enjoined from:

---

[1] The Plaintiffs have duly notified the United States Attorney of its intentions to seek an ex-parte seizure order as required under 15 U.S.C. §1116 (d) (2).  A copy of the Notice Letter is attached hereto as Exhibit " N. "

(a) Importing into or exporting to the United States, its territories or possessions, any goods which bear a copy of any of the Plaintiffs trademarks and/or copyrights or any confusingly similar variations thereon or copies thereof, which goods are not authorized by Plaintiffs for sale in the United States or elsewhere (hereinafter called "Infringing goods"):

(b) Exporting from, or importing into any foreign country from, the United States, its territories or possessions, any Infringing goods;

(c) Manufacturing, assembling, distributing or selling or participating in the manufacture or assembly, distribution and sale of any Infringing goods;

(d) Infringing Plaintiffs' established proprietary rights in the licensed trademarks and copyrights and all protectable variations thereof, by further promoting advertising, publishing or offering for sale, goods which bear a copy of any of the trademarks or copyrights or any confusingly similar variations thereof;

(e) Otherwise infringing Plaintiffs' established proprietary rights at common law in any trademarks;

(f) Competing unfairly with Plaintiffs in any manner by continued use or sale of Infringing goods or any goods bearing or depicting any of the trademarks or copyrights of Plaintiffs or any colorable variations or imitations thereof;

(g) Further damaging Plaintiffs' established goodwill and reputation by diluting the distinctiveness of Plaintiffs' established proprietary rights by holding themselves out as having any business relationship with the Plaintiffs, or any of them.

(h) Competing unfairly with Plaintiffs by passing off Infringing goods as genuine goods of Plaintiffs; and

(i) Buying, selling or in any way dealing with Infringing goods or any goods bearing a copy of the rights of any of the above-referenced trademarks, copyrights or any colorable variations or imitations thereof.

(j) and further the Defendants are ordered to escrow any and all proceeds, monies, drafts, accounts or monies of any kind due or to become due on account of or in any manner related to the manufacture, sale, advertising and distribution of any Infringing goods.

C.     That the Court issue a Short Order of Notice on Plaintiffs' Request for a
       Preliminary Injunction;

D.     That upon return and after hearing that the Court issue an order preliminarily
       enjoining the Defendants and any of their respective officers, agents, servants,
       vendors, employees, representatives, as well as all persons and entities acting in
       concert or participating with them be and hereby are preliminarily restrained and
       enjoined from:

              (a) Importing into or exporting to the United States, its territories or
              possessions, any goods which bear a copy of any of the Plaintiffs
              trademarks and/or copyrights or any confusingly similar variations thereon
              or copies thereof, which goods are not authorized by Plaintiffs for sale in
              the United States or elsewhere (hereinafter called "Infringing goods"):

              (b) Exporting from, or importing into any foreign country from, the United
              States, its territories or possessions, any Infringing goods;

              (c) Manufacturing, assembling, distributing or selling or participating in
              the manufacture or assembly, distribution and sale of any Infringing
              goods;

              (d) Infringing Plaintiffs' established proprietary rights in the licensed
              trademarks and copyrights and all protectable variations thereof, by further
              promoting advertising, publishing or offering for sale, goods which bear a
              copy of any of the trademarks or copyrights or any confusingly similar
              variations thereof;

              (e) Otherwise infringing Plaintiffs' established proprietary rights at
              common law in any trademarks;

              (f) Competing unfairly with Plaintiffs in any manner by continued use or
              sale of Infringing goods or any goods bearing or depicting any of the
              trademarks or copyrights of Plaintiffs or any colorable variations or
              imitations thereof;

              (g) Further damaging Plaintiffs' established goodwill and reputation by
              diluting the distinctiveness of Plaintiffs' established proprietary rights by
              holding themselves out as having any business relationship with the
              Plaintiffs, or any of them.

(h) Competing unfairly with Plaintiffs by passing off Infringing goods as genuine goods of Plaintiffs; and

(i) Buying, selling or in any way dealing with Infringing goods or any goods bearing a copy of the rights of any of the above-referenced trademarks, copyrights or any colorable variations or imitations thereof.

(j) and further the Defendants are ordered to escrow any and all proceeds, monies, drafts, accounts or monies of any kind due or to become due on account of or in any manner related to the manufacture, sale, advertising and distribution of any Infringing goods.

E.   That after a hearing on the merits the Court issue an order permanently enjoining

Defendants and any of their respective officers, agents, servants, vendors,

employees, representatives, as well as all persons and entities acting in concert or

participating with them be and hereby are permanently restrained and enjoined

from:

(a) Importing into or exporting to the United States, its territories or possessions, any goods which bear a copy of any of the Plaintiffs trademarks and/or copyrights or any confusingly similar variations thereon or copies thereof, which goods are not authorized by Plaintiffs for sale in the United States or elsewhere (hereinafter called "Infringing goods"):

(b) Exporting from, or importing into any foreign country from, the United States, its territories or possessions, any Infringing goods;

(c) Manufacturing, assembling, distributing or selling or participating in the manufacture or assembly, distribution and sale of any Infringing goods;

(d) Infringing Plaintiffs' established proprietary rights in the licensed trademarks and copyrights and all protectable variations thereof, by further promoting advertising, publishing or offering for sale, goods which bear a copy of any of the trademarks or copyrights or any confusingly similar variations thereof;

(e) Otherwise infringing Plaintiffs' established proprietary rights at common law in any trademarks;

(f) Competing unfairly with Plaintiffs in any manner by continued use or sale of Infringing goods or any goods bearing or depicting any of the

22

trademarks or copyrights of Plaintiffs or any colorable variations or imitations thereof;

(g) Further damaging Plaintiffs' established goodwill and reputation by diluting the distinctiveness of Plaintiffs' established proprietary rights by holding themselves out as having any business relationship with the Plaintiffs, or any of them.

(h) Competing unfairly with Plaintiffs by passing off Infringing goods as genuine goods of Plaintiffs; and

(i) Buying, selling or in any way dealing with Infringing goods or any goods bearing a copy of the rights of any of the above-referenced trademarks, copyrights or any colorable variations or imitations thereof.

F.    Under Count I that the Court determine and declare that:

1)    the Defendants are using in commerce, without the Plaintiffs' consent, a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' registered trademarks.

2)    the Defendants use of the Plaintiffs' registered trademarks is likely to cause confusion and is in fact causing confusion, in violation of 15 U.S.C. § 1114(1)(a).

G.    Under Count II that the Court determine and declare:

1)    the Defendants willfully and deliberately engaged in unfair competition by using the trademarks of Plaintiffs so as to infringe upon the Plaintiff's rights;

2)    the use by the Defendants was a false designation of origin which tended to falsely represent that Defendants goods were supplied by, sponsored by or were affiliated with the Plaintiffs;

H.    Under Count III that the Court:

23

1)      order an accounting by Defendants, and each of them, of all gains, profits and advantages derived by them from their infringement of the above-identified copyrights pursuant to 17 U.S.C. §504(b);

2)      enter judgment against the Defendants for actual damages pursuant to 17 U.S.C. §504 (b); or

3)      statutory damages pursuant to 17 U.S.C. §504(c), including damages awardable on a finding that the above infringement was committed willfully;

4)      Plaintiffs' costs and reasonable attorneys' fees pursuant to 17 U.S.C. §505; and

I.      Under Count IV that the Court determine and declare:

1)      that the Defendants misappropriated and illegally used the rights of publicity of the above-named musical and entertainment artists by selling goods bearing the picture, name, image, likeness, signature and other indicia of the above-named artists in connection with the sale of posters and prints and that said actions were unauthorized and falsely suggested that the Defendants' goods were sponsored by affiliated with or sanctioned by Plaintiffs;

J.      Under Count V that the Court determine and declare:

1)      that the Defendants use of Plaintiffs' trademarks in connection with the sale of posters was unauthorized and was so similar so as to cause confusion as to the source and origin of the goods and damaged the Plaintiff's goodwill and business reputation;

24

K.     That Judgment issue against the Defendants under Counts I, II, III, IV and V in an amount to be determined by the trier of fact, together with interest and costs;

L.     That Plaintiffs be awarded damages for the injury to Plaintiffs' reputation, good will in an amount up to three times the actual damage and/or profit of the Defendants together with attorneys' fees, disbursement and costs of this action pursuant to 15 U.S.C. § 1117;

M.     That Plaintiffs be awarded their reasonable attorney's fees and costs;

N.     That Defendants be ordered to deliver any and all remaining infringing goods to the Plaintiffs for destruction pursuant to 15 U.S.C. § 1118, including an award of costs incurred by Plaintiffs for the destruction of such articles.

O.     That Plaintiffs be awarded Defendants' profits from its unlawful acts and that an accounting be rendered of such profit.

P.     That the Plaintiffs be awarded such other and further relief as this Court deems just and equitable.

Respectfully submitted,
Impulse Imports d/b/a Import Images, et. al.,

By their attorneys,
TIMOTHY J. ERVIN, BBO #567042
JOHN F. GALLANT, BBO #547951
GALLANT & ERVIN, LLC
One Olde North Road, Ste. 103
Chelmsford, MA 01824
(978) 256-6041
Fax: (978) 256-7977
Email: tim@gallant-ervin.com
          john@gallant-ervin.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) _Imric(Sc Imhris  et al.   V)._
_Global Print et.al._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

  ___ I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

  _X_ II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

  ___ III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

  ___ IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,   **RCL**
          690, 810, 861-865, 870, 871, 875, 900.

  ___ V.   150, 152, 153.    05

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
                                                           None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                    YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
                                                    YES ☐    NO ☒
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                    YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                    YES ☒    NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?
        Eastern Division ☒    Central Division ☐        Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division ☐    Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)
                                                    YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Timothy J. Ervin_
ADDRESS _Gallant & Ervin  LLC   1 olde North Rd  Chelms MA 01874_
TELEPHONE NO. _972  256 6041_

(CategoryForm.wpd -5/2/05)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Impulse Imports d/b/a Import Images

**DEFENDANTS**

Global Prints, Inc. d/b/a Campus Sales and Paul Kennedy

**(b)** County of Residence of First Listed Plaintiff    New York County, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Suffolk County, MA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Timothy J. Ervin, John F. Gallant, Gallant & Ervin, LLC,
One Olde North Rd., Ste 103, Chelmsford, MA 01824 (978) 256-6041

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government<br>Plaintiff | ☒ 3   Federal Question<br>(U.S. Government Not a Party) |
| ☐ 2   U.S. Government<br>Defendant | ☐ 4   Diversity<br>(Indicate Citizenship of Parties in Item III) |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | 4 |
| Citizen of Another State | 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN    (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1   Original<br>Proceeding | ☐ 2   Removed from<br>State Court | ☐ 3   Remanded from<br>Appellate Court | ☐ 4   Reinstated or<br>Reopened | ☐ 5   Transferred from<br>another district<br>(specify) | ☐ 6   Multidistrict<br>Litigation | ☐ 7   Judge from<br>Magistrate<br>Judgment |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. S. 1114, 1125(a), 17 U.S.C. S. 501

Brief description of cause:
Defendants are manufacturing and selling infringing posters and prints to which Plaintiffs hold the rights.

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE

$2 - 16 - 05$

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____