## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**IMPULSE IMPORTS d/b/a IMPORT** )
**IMAGES, et. al.** )
)
    **Plaintiffs** )   0 5  Civil Action No. 9 1 RCL
**v.** )
)
**GLOBAL PRINTS, INC. d/b/a CAMPUS** )
**SALES, et. al.** )
)
    **Defendants.** )
                          )

### *MEMORANDUM IN SUPPORT OF MOTION FOR*
### *ORDER TO SEIZE INFRINGING PRODUCT*

### I. *INTRODUCTION*

The Plaintiffs in this action are the holders of certain intellectual property rights in and to
various musical artists, the holder of rights in and to certain feature films, and/or other
protectable intellectual property, including the rights to use the intellectual property on
merchandise, including posters. This action comprises claims commenced by these entities
against Global Prints, Inc. d/b/a Campus Sales (hereinafter "Global") and Paul Kennedy
(hereinafter "Kennedy" and collectively as "Defendants") for among other things: 1) trademark
infringement and federal unfair competition under the Lanham Act, 15, U.S.C. §§ 1114, 1125(a);
for infringement and unfair competition under 15 U.S.C. §1125 (a); and 3) copyright
infringement arising out of the unlawful use of certain copyrighted photographs.

The Plaintiffs, Impulse Imports d/b/a Import Images (hereinafter "Impulse") and Pyramid
Posters Limited (hereinafter "Pyramid") have entered into licensing agreements to produce and
manufacture posters and prints bearing certain entertainment images and to use the names of
various musical artists, performers and famous photographs. Plaintiffs contend that the

Defendants are willfully and knowingly infringing upon the Plaintiffs' rights by manufacturing, distributing and selling Infringing Product, namely posters and prints.

The Plaintiffs now seek an ex-parte order to temporarily restrain the Defendants' infringement activity and an ex-parte seizure order pursuant to 15 U.S.C. §1116 (d) to seize any and all infringing products (and related records thereto) in the possession, care, custody and control of the Defendants in order to prevent the further infringement and dilution of their trademark rights and to prevent the Defendants from dumping and/or transferring the infringing goods to unknown third parties.

As explained more fully below, and in the Affidavit submitted in support of this motion, the Plaintiffs can demonstrate the requisite criteria for issuance of an ex-parte seizure order under 15 U.S.C. 1116 (d) (4) (B).

## II.    STATEMENT OF FACTS

### A.    Trademark Rights:

The Plaintiffs are the owners of federal trademark registrations for the respective marks being depicted on the unauthorized posters being sold by Global. The Registrations are listed on the Principal Register with the United States Patent and Trademark Office. Annexed to the Complaint as Exhibits "A1" through "I" are true copies of the trademark registrations issued to the Plaintiffs.

Specifically, Fifty-Six Hope Road ("Hope Road") is the owner of federal trademark registration for the name "Bob Marley". Hope Road is also the holder of a state trademark registration issued by the Commonwealth of Massachusetts for the name "Bob Marley". (Complaint, ¶4). Sheffield Enterprises, Inc. (hereinafter "Sheffield") is the holder of federal trademark registrations in and to the name "Frank Sinatra", "Frank Sinatra, Jr." and "Sinatra."

2

(Complaint, ¶5) Artisan Pictures, Inc. (hereinafter "Artisan") is the owner of federal trademark registration for the mark "Reservoir Dogs." (Complaint, ¶6) The Dean Foundation (hereinafter "Dean Foundation") is the owner of federal trademark registration for the name "James Dean." (Complaint, ¶9). Pearl Jam, LLC (hereinafter "Pearl Jam") is the owner of federal trademark registration for the name "Pearl Jam." (Complaint, ¶10) Radiohead Trademark Limited Corporation (hereinafter "Radiohead") is the owner of federal trademark registration for the name "Radiohead." (Complaint, ¶12) End of Music, LLC (hereinafter "End of Music) is the owner of federal trademark registration for the name "Kurt Cobain." (Complaint, ¶13) Orion Pictures, Inc. (hereinafter "Orion") is the owner of federal trademark registration for the word mark "Army of Darkness." (Complaint, ¶14) Museum Masters International (hereinafter "Museum Masters") is the owner of federal trademark registrations for the word mark "Salvador Dali." (Complaint, ¶16).

As a result of the Plaintiffs' marketing and selling of posters and prints, the Plaintiffs have gained recognition and good will in their Registered Marks for the image, likeness, photograph, name, signature and other indicia of the musical artists, performers and entertainers depicted thereon. (Complaint, ¶39-47). Plaintiffs have actively marketed and sold their Licensed Products within numerous geographical territories, including the Commonwealth of Massachusetts. (Complaint, ¶33-35). Upon information and belief, the Defendants are in the business of manufacturing, wholesaling, distributing, retailing, advertising, promoting and selling posters and prints. The Plaintiffs have confirmed that the Defendants are currently manufacturing, advertising and selling unlicensed posters that infringe upon the Plaintiffs' registered trademarked products and the products distributed and sold by the Defendants are substantially similar to the Plaintiffs' registered products and they create a likelihood of

3

confusion as to the origin and constitute an infringement of the Plaintiffs' rights. (Complaint, ¶ 41).

Defendants are aware that they do not have any right to manufacture, distribute or sell any unlicensed products in violation of the Plaintiffs' intellectual property rights. (Complaint, ¶36). Defendants' continued sale, distribution and manufacture of Infringing Products bearing and/or depicting the Plaintiffs' protected intellectual property constitutes actionable infringement. (Complaint, ¶44). The Plaintiffs have no control over the quality of the goods sold by the Defendants, and because of the confusion as to the source engendered by the Defendants, the Plaintiffs' valuable goodwill in respect to its registered trademarks will be irreparably harmed. (Complaint, ¶43). The use by the Defendants of the respective registered trademarks on their posters and prints has caused confusion and mistake and deception of purchasers as to the source of origin of their goods which falsely suggest that their Infringing Products are sponsored by, licensed by or otherwise affiliated with the Plaintiffs. These actions constitute trademark infringement and are in violation of, inter alia 15 U.S.C. § 1114(a). (Complaint, ¶44).

*III.   ARGUMENT*

### *A. EX-PARTE SEIZURE ORDERS ARE EXPRESSLY AUTHORIZED BY STATUTE IN TRADEMARK ACTIONS*

Actions for infringement of common law and federally registered trademarks are governed by the Lanham Act, *inter alia*, 15, U.S.C. §§ 1114, 1125(a).[1]  Under 15 U.S.C. Section 1116 (d), the statute provides in pertinent part:

(a) Jurisdiction; service

---

[1]  The Commonwealth of Massachusetts has enacted various trademark statutes including, M.G.L. c. 110B §1-16, M.G.L. c. 266 §147.

4

> The several courts vested with jurisdiction of civil actions arising under this
> chapter shall have power to grant injunctions, according to the principles of equity
> and upon such terms as the court may deem reasonable, to prevent the violation of
> any right of the registrant of a mark . .

(d) Civil actions arising out of use of counterfeit mark

> 1(A) In the case of a civil action (for counterfeiting) the court may, upon ex-parte
> application, grant an order under subsection (a) of this section pursuant to this
> subsection providing for the seizure of goods and counterfeit marks involved in
> such violation and the means of making such marks, and records documenting the
> manufacture, sale or receipt of things involved in such violation.

In trademark infringement actions, courts have consistently granted applications for ex-parte seizure orders to prevent the passing off of infringing merchandise to the public. See, United States v. Bohai Trading, Co., 45 F.3d 577 (1st Cir. 1995); Fimab-Finanziaria Maglificio v. Helio Import/export, 601 F.Supp. 1 (S.D. Fla. 1983); Vuitton v. White, 945 F.2d 569 (3rd Cir. 1991) (holding failure to grant ex-parte order where moving party has demonstrated prima facia showing under Lanham Act constituted reversible error)(further citations omitted). Indeed, some of the Plaintiffs in this action have successfully obtained ex-parte seizure orders in the states of California, New York and Florida. See Seizure Orders issued in favor of Hope Road annexed hereto as Exhibits "A", "B" and "C" respectively.

The Lanham Act and courts confronted with requests for ex-parte seizure orders have identified criteria that would warrant the granting of the requested relief, which criteria include: 1) showing that the Defendant parties are selling and offering for sale infringing merchandise; 2) that the moving party has taken steps to avoid giving notice of the suit to the defendants; and 3) that the giving of notice would likely result in the disappearance of the infringing goods and

5

transfer to unknown third parties effectively thwarting the moving parties ability to prevent irreparable injury of its trademark rights.[2]

The rationale for granting ex-parte relief was enunciated in the seminal case of In re Vuitton et Fils S.A., 606 F.2d 1 (2d. Cir. 1979), finding that "dumping of counterfeit goods or transfer of counterfeit goods to unknown third parties is a common practice in the counterfeiting industry." Other courts have gone on to note that: "Defendants in such counterfeiting cases often raise spurious, if any, defenses, and have few or no discoverable assets from which a monetary award of damages can be satisfied." Helio, 601 F.Supp at 2. One of the strongest statements supporting the granting of ex-parte seizure orders was rendered by the Fifth Circuit Court of Appeals in the matter of: CPC International Inc. v. Albury Sales Co., 504 F.Supp. 549 (S.D. Fla. 1980) (fake Mazola corn oil), appeal dismissed (5th Cir. 1981), wherein the Court stated:

> Consent restraints have been entered but not abided ... While it appears that they [defendants] may have harvested some crop since the litigation commenced, they

---

2
A party moving for issuance of an ex parte seizure order must satisfy the criteria set forth in Section 1116 (d) (4) (B), which provides as follows:

[t]he court shall not grant [a seizure application] unless—the court finds that it clearly appears from specific facts that—

(i)    an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;

(ii)   the applicant has not publicized the requested seizure;

(iii)  the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv)   an immediate and irreparable injury will occur if such seizure is not ordered;

(v)    the matter to be seized will be located at the place identified in the application;

(vi)   the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii)  the person against whom seizure would be ordered , or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to parte seizure order is not adequate to achieve the purpose App at 204-05.

6

> have infringed another's land in the raising of it and, though under court order to
> account for its proceeds, they refuse.

> California, New York and Florida, particularly South Florida, have experienced a
> rash of counterfeits of famous trademarks. The spectrum of products which have
> been prey to this contagion appear to be limited only by the perimeters of human
> imagination. Designer clothing, well-known watches, major credit cards, and
> even such consumer items as Mazola corn oil have been slavishly copied. The
> public is deceived daily.

As one commentator has described the situation, "Experience in hundreds of cases has

shown that it is extremely likely that a counterfeiter, upon being apprised of the institution of a

lawsuit by the trademark owner, will conceal his infringing merchandise and either destroy or

conceal all records relating to this merchandise, thereby frustrating implementation of the

trademark owner's statutory and common law rights." Bainton, Seizure Orders: *An Innovative*

*Judicial Response to the Realities of Trademark Counterfeiting*, 73 Trademark Rep. 459, 464

(1983).

In response to the near daily assault upon the holders of famous trademarks, the United

States Congress enacted the provisions of 15 U.S.C. 1116 (d) in order to protect trademark

owners. The legislative purpose underlying §1116 (d) is manifest from the Joint Statement of the

congressional committees:

> The purpose of the ex parte seizure provision is to provide victims of trademark
> counterfeiting with the means of ensuring that the courts are able to exercise their
> jurisdiction effectively in counterfeiting cases. Testimony before both the House and
> Senate Judiciary Committees established that many of those who deal in counterfeits
> make it a practice to destroy or transfer counterfeit merchandise when a day in court is on
> the horizon. The ex parte seizure procedure is intended to thwart this bad faith tactic,
> while ensuring ample procedural protections for persons against whom such orders are
> issued. In essence, both the Senate and House bills permitted issuance of an ex parte
> seizure order if the applicant could show that the Defendant would not comply with a
> lesser court order, such as a temporary restraining order, and that there was no means of
> protecting the court's authority other than to seize the property in question on an ex parte
> basis. Joint Statement, 130 Cong.Rec. at H12080, reprinted in Gilson, 4 Trademark
> Protection and Practice, §34 at34-622 . See also H.R. 997, 98[th] Cong., 2d. Sess., 19
> (1984).

In light of the burgeoning problem of trademark infringement and the difficulty faced by trademark holders to protect their trademark rights, the Congress and courts have embraced ex-parte seizure orders in order to enable trademark holders to curtail infringement by permitting immediate seizure of infringing goods and holding same as security to satisfy a judgment.    Because the majority of those individuals and entities infringing trademarks often lack any assets upon which to ultimately satisfy a judgment, interim restraining orders are commonly ignored, leaving immediate seizure of all infringing product the only meaningful relief available to the trademark holder.

## B. THE PLAINTIFFS MEET ALL STATUTORY CRITERIA FOR ISSUANCE OF AN EX-PARTE SEIZURE ORDER

The Plaintiffs have expended considerable resources in establishing the respective registered trademarks in the minds of customers as a source of high quality licensed products. The Plaintiffs are well known throughout the United States, the United Kingdom and the world as sources of origin for authorized licensed products, including but not limited to posters, prints and the like. The use by Defendants of the registered trademarks or marks that are confusing similar and/or a colorable imitation thereof on their Infringing Product is likely to cause confusion or mistake or deception to the consuming public as to the source of origin of those goods. Purchasers are likely to purchase Defendants' goods bearing the Plaintiffs' trademark believing that they are Plaintiffs' authorized products.  The Plaintiffs have no control over the quality of the goods sold by the Defendants, and because of the confusion as to the source engendered by the Defendants, the Plaintiffs' valuable goodwill and reputation in respect to their trademarks will be irreparably harmed.  This is especially where as in this case the Defendant is selling its unlicensed goods along side licensed products.

8

## 1.   An Ex Parte Seizure Order is the only adequate remedy

Any order other than an ex parte seizure order would be insufficient to fully protect the Plaintiffs' trademark rights.   Many of the Plaintiffs have expended considerable resources investigating and prosecuting claims against individuals and entities that have infringed upon the their respective trademark rights.   From these experiences, the Plaintiffs have discovered that absent an order permitting the immediate seizure of the infringing product, the infringing product in possession of the offending party disappears and is simply transferred to unknown third parties.   This is especially likely in this case where the Defendants are aware of their infringement and even admitted to it in the past.   Moreover, the Defendants are gearing up to deliver these products for sale on college campuses throughout the United States, where little record keeping or oversight is employed.   If the Defendants are made aware of this action it is likely that the infringing posters will be immediately disseminated out to the various college campuses in the hopes to avoid detection.

The Defendants in this action were previously warned to cease their acts of infringement. Rather than abating their infringement the Defendants have persisted and have even added additional bootleg products to its inventory.   These actions of the Defendants are willful and unabashed and done with the full knowledge that they lack any authority to sell these unlicensed designs.   If they were informed through notice to appear for a hearing, all remaining products as well as all instruments used to create the infringing products would likely disappear.

Accordingly, it is apparent that an injunction will not be sufficient to prevent against the unauthorized dumping of the infringing goods in the possession of the defendants in this action to unknown third parties.   Infringers oftentimes usually maintain no invoices, no customer receipts, no inventory records and no corporate records to determine the extent of sales of

9

product. Therefore, it is evident that without the benefit of an ex-parte seizure order, the Defendants will dump any and all infringing merchandise in their possession, custody and control, regardless of whether an injunction has been issued in order to destroy any remaining evidence that could be used against them. An ex-parte seizure order therefore is the only practical means to ensure that the infringing goods will not be disseminated by untraceable sales to unknown third parties, thereby leading to the further infringement and dilution of the plaintiff's trademark rights. Rather, consistent with the legislative history supporting the need for ex parte seizure orders, an ex parte order is required here as "a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court." Joint Statement, 130 Cong.Rec. at H120781. Indeed, as noted by the Third Circuit Court of Appeals, the Congress: " . . . intended seizure orders to be available whenever a temporary restraining order or the threat of contempt for violation thereof are unlikely to result in the preservation of the evidence and the removal of the counterfeit merchandise from commerce." Vuitton v White, 945 F.2d 569 (3rd Cir. 1991).

### 2.    The Plaintiffs have not publicized the requested seizure

The Plaintiffs in this action have gone to great lengths to ensure that the Defendants have not been notified of the intended action to seize all infringing products in their possession. In this regard, no agent, servant, or employee of the plaintiffs has indicated and/or informed the Defendants of the intended seizure. Indeed all contact has been made solely to confirm that the Defendants were indeed offering for sale unlicensed products. (Affidavit of Patrick Smith, ¶23)

### 3.    The Plaintiffs have demonstrated that the Defendants are offering for sale and distributing goods containing the Plaintiffs mark

The Plaintiffs are the holders of federal trademark registrations granting the exclusive rights to sell products under their respective registered marks. The Plaintiffs are aware through

their own licensing arrangements and contact with the trademark holders that the Defendants in this action have not sought to enter into nor entered into any licensing agreements with any of the Plaintiffs. Therefore, the Defendants have no right to utilize the trademarks on any products.

The Plaintiffs confirmed through its own purchases (and have provided documentation and actual product evidencing said purchases) that the Defendants are manufacturing and offering for sale infringing merchandise. The Plaintiffs are in possession of infringing goods bearing and depicting the Plaintiffs' rights, which merchandise was purchased from the Defendants. The Defendants have no right or entitlement to sell goods depicting these rights. Accordingly, the sale by the Defendants of these infringing products is evidence that they are using and offering for sale goods that infringe upon the federal trademark rights of the Plaintiffs.

**4. Without an ex parte order the Plaintiffs will be irreparably harmed**

The Plaintiffs have expended considerable resources in establishing their respective trademarks in the minds of customers as sources of high quality licensed products. The Plaintiffs are well known throughout the United States, the United Kingdom and the world as sources of origin for authorized licensed products, including but not limited to posters and prints. The use by Defendants of the respective trademarks on their Infringing Products is likely to cause confusion or mistake or deception to the consuming public as to the source of origin of those goods. Purchasers are likely to purchase Defendants' goods bearing the respective trademarks believing they are Plaintiffs' authorized products.

The Defendants have previously acknowledged the Plaintiffs' rights and agreed to refrain from any activity that infringes upon same. The Plaintiffs have no control over the quality of the goods sold by the Defendants, and because of the confusion as to the source engendered by the Defendants, the Plaintiffs' valuable goodwill and reputation in respect to their trademarks will be

11

irreparably harmed. This is especially true here where the Defendants are selling a mixture of licensed and unlicensed posters.

Courts have consistently held that potential damage to reputation as well as likelihood of confusion constitutes irreparable injury. In trademark cases, establishing a "high probability of confusion as to sponsorship almost inevitably establishes irreparable harm, and a strong probability of success on the merits". Church of Scientology International v. Elmira Mission of Church of Scientology, 794 F.2d 38 (2d. Cir. 1986). Undoubtedly, without an order seizing the infringing product, the infringing product in the possession of the Defendants will likely be scattered to unknown third parties, effectively preventing the Plaintiffs from removing this counterfeit merchandise from commerce, causing further damage to their trademark rights.

## 5. The items to be seized will be located at the place identified

The Plaintiffs have secured through investigation the manufacturing and retail sales locations maintained by the Defendants and have identified same in the Complaint. Sales invoices and receipts from the Defendants, as well as information obtained from the Division of Corporations for the Secretary for the Commonwealth of Massachusetts trace back to these same addresses. Additionally, Smith traveled to the sales tent outside the Prudential Center and purchased products from the Defendants at that location. Upon information and belief these locations are the only permanent locations operated by the Defendants and are the only permanent locations where the infringing merchandise will be located.

## 6. The Balance of Harm tips heavily in favor of the Plaintiffs

The harm to be suffered by the Plaintiffs if the ex-parte seizure order is not granted far outweighs any harm that granting said order might have on the Defendants. The Defendants have no colorable claim or right to possess, distribute or sell infringing merchandise, therefore,

12

they cannot be harmed by an order that removes product that they have no right to possess in the first place.   See, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) ("A defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist its infringing activities"). Any damage the Defendants may sustain pales in comparison to the damage and continued threat of damage to the Plaintiffs' goodwill and reputation if the ex-parte seizure order does not issue.

Injury to goodwill and reputation is not easily measurable and by its very nature is irreparable. Lone Star Steak House & Saloon v. Alpha of Virginia, 43 F.3d 922 (4th Cir. 1995) ("We recognize that irreparable injury regularly follows from trademark infringement."). Accordingly, the damage likely to be sustained by the Plaintiffs far exceeds any damage the Defendants might sustain. Moreover, as part of the requested relief, the Plaintiffs have agreed to post a bond in the amount of $75,000.00 to cover any and all claims that the seizure of the infringing merchandise was somehow wrongful.

## 7.    The Defendants will destroy, move, and or hide all infringing products unless an ex-parte seizure order is granted

The Plaintiffs have expended considerable resources investigating and prosecuting claims against individuals and entities that infringing upon their rights. From these experiences, the Plaintiffs have discovered that absent an order permitting the immediate seizure of the infringing product, the infringing product in possession of the offending party oftentimes disappears and is simply transferred to unknown third parties.

This is certainly the case confronting this Court. The Defendants are actively gearing up to sell posters as students are set to return to school. The Defendants scatter a temporary sales force to hundreds of college campuses to sell their products, out of temporary tent locations where little or no records of sales are kept. The ephemeral nature of the sales locations make

13

them an ideal location from which to disseminate the bootleg products because they are maintained for such a short period of time. The Defendants have continued to engage in this willful activity despite having been warned to cease same in the past, demonstrating the Defendants' commitment to sell these goods at all costs. The incentive for the Defendants to destroy and conceal evidence in situations like this is enhanced. There is little doubt that if the Defendants are alerted of a hearing concerning this merchandise that it will immediately be sold and/or transferred to another location. The Defendants thrive upon the sale of infringing merchandise and will seek to sell whatever they can at any price rather than lose it entirely and have it used as the basis for enhanced damages based upon willful infringement.

An ex-parte seizure order is the only practical means to ensure that the infringing goods will not be disseminated by untraceable sales to unknown third parties, thereby leading to the further infringement and dilution of the Plaintiff's trademark rights. Rather, consistent with the legislative history supporting the need for ex parte seizure orders, an ex parte order is required here as "a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court." Joint Statement, 130 Cong.Rec. at H120781. Indeed, as noted by the Third Circuit Court of Appeals, the Congress: " . . . intended seizure orders to be available whenever a temporary restraining order or the threat of contempt for violation thereof are unlikely to result in the preservation of the evidence and the removal of the counterfeit merchandise from commerce." Vuitton v White, 945 F.2d 569 (3rd Cir. 1991).

14

### *REQUEST FOR RELIEF*

Wherefore, for the forgoing reasons, the Plaintiffs respectfully request that the Court grant its application for an ex parte seizure order against the Defendants.

Respectfully submitted,
Impulse Imports d/b/a Import Images, et. al.,

By their attorneys,
TIMOTHY J. ERVIN, BBO #567042
JOHN F. GALLANT, BBO #547951
GALLANT & ERVIN, LLC
One Olde North Road, Ste. 103
Chelmsford, MA 01824
(978) 256-6041
Fax: (978) 256-7977
Email: tim@gallant-ervin.com
        john@gallant-ervin.com

FILED

05 JUN 15 PH 2: 54

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

FIFTY-SIX HOPE ROAD MUSIC, LTD., a
Bahamian International Business Company; and
ZION ROOTSWEAR, LLC, a Florida Limited
Liability Company,

        Plaintiffs,

    v.

KOKOB PRINTING, a California entity; and
NUNU BELETTE, an individual d/b/a KOKOB
PRINTING,

        Defendants.

Case No.: '05 CV 1226 L    (NLS)

[FILED UNDER SEAL]

[PROPOSED] ORDER FOR *EX PARTE*
SEIZURE

1

**ORIGINAL**

This cause has come before the Court upon the application of plaintiffs Fifty Six Hope Road Music Limited and Zion Rootswear, LLC for an ex-parte Order under 15 U.S.C. § 1116 (d)(4) to seize any and all infringing product bearing the trademark, name, image, picture, likeness, signature or other indicia of Bob Marley in the care, custody or control of the defendants, Kokob Printing and Nunu Bellete, and after hearing, being fully advised, the court:

Hereby makes the following findings of fact and conclusions of law pursuant to 15 U.S.C., §1116 (d)(5)(A):

1.      Hope Road, is the holder of federal registration no.2,349,361 and is the owner and exclusive licensor of certain rights in the picture, name, likeness, image, signature and other indicia of the late Bob Marley ("Marley Rights").

2.      Hope Road has used the Marley Rights in commerce on numerous products, including but not limited to DVDs and other general merchandise.

3.      On January 1, 1998, Zion entered into a Licensing Agreement with Hope Road, which grants Zion the worldwide exclusive right to use the Marley Rights on tee shirts, sweatshirts, and other general merchandise (hereinafter referred to as the "Licensed Products").

4.      As a result of its marketing and selling DVDs and other general merchandise Zion has gained recognition and good will in its trade name "Zion Rootswear" and also its use of the Registered Mark for the Marley Rights depicted on its products.

5.      Plaintiffs have actively marketed and sold the Licensed Product within numerous geographical territories, including the State of California.

6.      The defendants have been manufacturing, distributing and selling an unauthorized DVD of a benefit concert held in Ethiopia and sponsored and owned by the Plaintiffs and featuring members of Bob Marley's family under the name: "Bob Marley's 60th Birthday" and

"Africa Unite" with an image of Bob Marley, without a license and the DVD manufactured and sold by the defendants is substantially similar to Plaintiffs' Licensed Product that they are creating a likelihood of confusion as to the origin and constitutes an infringement upon Plaintiffs' rights.

7.    The Plaintiffs have purchased infringing DVDs from the defendants confirming their illegal activity and/or provided documentary evidence demonstrating the defendants' manufacture and sale of infringing products.

8.    Prior to the commencement of this action, no agent, servant or employee of the plaintiffs notified the defendants of the contemplated action to move to obtain an ex-parte seizure order.

9.    It is likely that without the ex-parte seizure order, the defendants will simply transfer the infringing DVDs in their possession to third parties, even if the Court issued an injunction order barring the transfer or sale of these materials.

10.    It is apparent that a seizure order is the only feasible means to protect against the disappearance of all unauthorized DVDs in the possession of the defendants.

11.    As a matter of law this Court finds that ex-parte seizure orders to seize infringing merchandise are expressly permitted under 15 U.S.C. §1116 (d)(4).

12.    Ex-parte seizure orders have been granted by district courts in the past, including the Central District of California, against individuals and companies passing off infringing merchandise to the public.  See, *Fimab-Finanziaria Maglificio v. Helio Import/Export*, 601 F.Supp. 1 (S.D. Fla. 1983); *Fimab-Finanziaria Maglificio v.Kitchen*, 548 F.Supp. 248 (S.D. Fla. 1982).  See Also, *Fifty Six Hope Road Ltd, et. al. vs. O.K. Mike et.al.*, Central District of California, Civil Action No. 03-1088; *Fifty Six Hope Road Ltd. et.al. v. Wailers, et. al.*, Central

3

District of California, Civil Action No. 02-01894.

13.    The plaintiffs have duly notified the United States Attorney of the proposed ex-parte action against the defendants.

14.    The plaintiffs have represented that they will post a security bond in the amount of $25,000.00 prior to the effectuation of this Order.

15.    As a matter of law this Court finds that an ex-parte seizure order in this matter is necessary to prevent the transfer of counterfeit goods to unknown third parties. *In re Vuitton et fils S.A.*, 606 F.2d 1 (2d. Cir. 1979).

16.    As a matter of law, I find that the plaintiffs have demonstrated that an order other than an ex-parte seizure order is not adequate to achieve the purposes of Section 1114 of this title.

17.    As a matter of law, I find the applicants have not publicized the requested seizure.

18.    As a matter of law, I find the applicants are likely to succeed in showing that the persons against whom seizure will be ordered have used a counterfeit mark in connection with the sale, offering for sale, and distribution of goods and services.

19.    As a matter of law, I find an immediate and irreparable injury will occur if such seizure is not ordered.

20.    As a matter of law, I find the matter to be seized will be located at the places identified in the application.

21.    As a matter of law, I find the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the persons against whom seizure would be ordered by granting the application. See, *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) ("A defendant who knowingly infringes another's copyright cannot

4

complain of the harm that will befall it when properly forced to desist its infringing activities").

22.     As a matter of law, I find the persons against whom seizure would be ordered, or persons acting in concert with such persons, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

Having made the above-identified findings of fact and conclusions of law, the Court hereby ORDERS, ADJUDGES and DECREES that:

1.     Upon the Posting of the Security Bond in the amount of $25,000.00, the United States Marshal for this judicial district or their designee Investigative Consultants jointly or severally, and persons acting under their supervision, shall seize and impound any and all infringing counterfeit Bob Marley goods which the defendants are in possession of, which defendants are attempting to sell or are holding for sale, including any carton or container in which the counterfeit goods are carried or stored, and seize and impound any and all equipment, tapes, dvds, reproduction equipment photographs, computer files, computer images, electronic images, samples, prototypes and templates bearing, containing or depicting the trademark, picture, image, name, signature or other indicia of Bob Marley, and deliver the same up to be held by the Plaintiffs pending a further order of this Court. The United States Marshal and/or their designee are further directed to use all reasonably necessary force to accomplish the foregoing;

2.     And that the United States Marshal or their designee, and persons acting under their supervision, shall consider as counterfeit all goods in the possession, custody or control of the defendants which bear or display Bob Marley, or in any manner involve the Bob Marley 60th Birthday DVD or such goods as identified by plaintiffs' agents;

5

3.     And that the United States Marshal and/or their designee be directed to seize the accounting invoices and any written documentation and information in connection with the purchase or sale, or shipment or transfer of the counterfeit goods, including but not limited to purchase orders, sales invoices, business records, shipping invoices, bills of lading, computer records, computer files, computer images, and the like, and allow plaintiffs and their attorneys to immediately inspect and copy same;

4.     And that the United States Marshal and/or their designee, and persons actingunder their supervision, shall fully cooperate with plaintiffs, their attorneys, and agents to the end that representatives of the plaintiffs accompany the United States Marshal and/or their designee to identify the counterfeit goods and the above said records. The United States Marshal and/or their designee is directed in particular to seize any counterfeit Bob Marley DVDs and/or related records as identified by plaintiffs or its attorneys or agents at, in or around the facilities of the defendant, **Kokob Printing located at 3645 El Cajon Boulevard, San Diego,** and any trucks, storage bins, boxes, cartons, vehicles or other storage area at, around or in said premises in which said counterfeit goods are being stored, housed, maintained or transported. The United States Marshal and/or their designee are further directed to use all reasonably necessary force to accomplish the foregoing.

5.     The United States Marshal and/or their designee are empowered and directed to permit plaintiffs, their attorneys or agents, if defendants fail or refuse to identify such records or such records cannot otherwise be located, to search through all records of the defendants at the above-said premises to locate those records relating to the particular counterfeit goods. The United States Marshal and/or their designee are further directed to use all reasonably necessary force to accomplish the foregoing.

6

6.     Pursuant to 15 U.S.C. §1116 (d) (10) (A), the Court shall conduct a further hearing on this Order for seizure on June 27, 2005, at 10:30 a.m. MJ

7.     As security for the issuance of this Order, the Applicant shall post with this Court a surety bond in the amount of Twenty Five Thousand ($25,000) dollars, prior to the execution thereof.

8.     The Plaintiffs agree to indemnify and hold harmless the United States Marshals' Office for any and all claims arising out of this Order.

DONE and ORDERED in chambers at the United States District Courthouse, 2:50 PM , this 15 day of June , 2005.

M James Freeny

U.S. DISTRICT COURT JUDGE

*MANACHON*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FIFTY-SIX HOPE ROAD MUSIC, LTD.,et. al.<br><br>    **Plaintiffs**<br><br>v.<br><br>AFTERLIFE, et. al.<br><br>    **Defendants** | )<br>)<br>)<br>)<br>)    ~~Ca. No.~~<br>)    03CIV 9505 (VM)<br>)<br>)<br>)<br>) |

## ORDER FOR SEIZURE UNDER 15 U.S.C. 1116 (d) (4)

This cause has come before the Court upon the application of Plaintiffs Fifty Six Hope Road Music Limited ("Hope Road") and Zion Rootswear, LLC ("Zion" and collectively with Hope Road as "Plaintiffs") for an ex-parte Order under 15 U.S.C., § 1116 (d) (4) to seize any and all infringing product bearing the name, image, picture, likeness, signature or other indicia of Bob Marley in the care, custody or control of the defendants, **Afterlife, d/b/a Afterlife Graff House, Richard Goltry, V. Christina Rosero, United Fashion NY and Nicholas Novelties,** (hereinafter collectively as "Defendants") and after hearing, being fully advised, the court:

Hereby makes the following findings of fact and conclusions of law pursuant to 15 U.S.C., §1116 (d) (5) (A):

1.    Hope Road, is the holder of federal registration no.2,349,361 for, inter alia, class 25 for tee-shirts and sweatshirts, and is the owner and exclusive licensor of certain rights in the picture, name, likeness, image, signature and other indicia of the late Bob Marley.

2.   Hope Road has used the Marley Rights in commerce on numerous products, including but not limited to tee shirts, sweatshirts, hats, caps and bandanas.

3.   On January 1, 1998, Zion entered into a Licensing Agreement with Hope Road, which grants Zion the world-wide exclusive right to use the Marley Rights on tee shirts, sweatshirts, hats and other products (hereinafter referred to as the "Licensed Products").

4.   As a result of its marketing and selling tee shirts, both long and short, hats, and other general merchandise, Zion has gained recognition and good will in its trade name "Zion Rootswear" and also its use of the Registered Mark for the image, likeness, name, signature and other indicia of Marley depicted in its products.

5.   Plaintiffs have actively marketed and sold the Licensed Product within numerous geographical territories, including the State of New York.

6.   The Plaintiffs have submitted evidence that indicates that the Defendants have been manufacturing distributing and selling tee shirts, sweatshirts and other general merchandise depicting the Marley Rights, without a license and the products distributed and sold by the Defendants are substantially similar to Plaintiffs' Licensed Products and they are creating a likelihood of confusion as to the origin and constitute an infringement upon Plaintiffs' rights. The Plaintiffs have provided written documentation evidencing the purchase of the alleged infringing products from each of the Defendants as well as the alleged contraband items.

2

7.    In addition, the Plaintiffs have submitted affidavit testimony from Michael Conley of Zion Rootswear, stating that he has examined the "Bob Marley" products being offered for sale by each of the Defendants and that these products are not licensed products and are not sponsored by or sanctioned by Hope Road or Zion.

8.    The testimony of Mr. Conley along with documentary exhibits establishes that the Defendants are presently offering for sale and/or are intending to offer for sale infringing Marley Merchandise.

9.    Prior to the commencement of this action, no agent, servant or employee of the Plaintiffs notified the Defendants of the contemplated action to move to obtain an ex-parte seizure order.

10.    The Plaintiffs have demonstrated due to the ephemeral nature of the goods involved, that it is likely that without the ex-parte seizure order, the Defendants will simply transfer the infringing products in their possession to third parties, even if the Court issued an injunction order barring the transfer or sale of these materials.  This position is bolstered by the fact that some of the Defendants purchase licensed goods directly from Zion and therefore are aware that the other products being offered are illegal, unlicensed and carry legal responsibility.

11.    It is apparent that a seizure order is the only feasible means to protect against the disappearance of all infringing merchandise in the possession of the Defendants.

12.    As a matter of law this Court finds that ex-parte seizure orders to seize infringing merchandise are expressly permitted under 15 U.S.C., 1116 (d)(4).

3

13.    Ex-parte seizure orders have been granted by district courts in the past against individuals and companies passing off infringing merchandise to the public, including to the Plaintiffs in this case in the matters of <u>Fifty Six Hope Road Music, et. al. vs. City Wide Tees, et.al.</u>, Civil Action No. **AW 03 CV 3062.** The rationale for granting ex-parte relief was enunciated in the seminal case of <u>In re Vuitton et fils S.A.</u>, 606 F.2d 1 (2d. Cir. 1979), finding that "dumping of counterfeit goods or transfer of counterfeit goods to unknown third parties is a common practice in the counterfeiting industry." See, also, <u>Fimab-Finanziaria Maglificio v. Helio Import/export</u>, 601 F.Supp. 1 (S.D. Fla. 1983); <u>Fimab-Finanziaria Maglificio v.Kitchen</u>, 548 F.Supp. 248 (S.D. Fla. 1982).

14.    The Plaintiffs have duly notified the United States Attorney of the proposed ex-parte action against the Defendants.

15.    The Plaintiffs have represented that prior to the seizure they shall post a security bond in the amount of $50,000.00 with this Court.

16.    As a matter of law this Court finds that an ex-parte seizure order in this matter is necessary to prevent the transfer of counterfeit goods to unknown third parties. <u>In re Vuitton et fils S.A.</u>, 606 F.2d 1 (2d. Cir. 1979).

17.    As a matter of law, I find that the Plaintiffs have demonstrated that an order other than an ex-parte seizure order is not adequate to achieve the purposes of Section 1114 of this title;

18.    As a matter of law, I find the applicants have not publicized the requested seizure;

4

19. As a matter of law, I find the applicants are likely to succeed in showing that the persons against whom seizure will be ordered have used a counterfeit mark in connection with the sale, offering for sale, and distribution of goods and services;

20. As a matter of law, I find an immediate and irreparable injury will occur if such seizure is not ordered;

21. As a matter of law, I find the matter to be seized will be located at the places identified in the application;

22. As a matter of law, I find the harm to the applicants of denying the application outweighs the harm to the legitimate interests of the persons against whom seizure would be ordered by granting the application;

23. As a matter of law, I find the persons against whom seizure would be ordered, or persons acting in concert with such persons, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicants were to proceed on notice to such persons.

Having made the above-identified findings of fact and conclusions of law, the Court hereby ORDERS, ADJUDGES and DECREES that

1. Upon the Posting of the Security Bond in the amount of $50,000.00, the United States Marshal for this judicial district or their designee Abacus Security jointly or severally, and persons acting under their supervision, shall seize and impound any and all infringing counterfeit Bob Marley goods which the Defendants are attempting to sell or are holding for sale,

5

including any carton or container in which the counterfeit merchandise is carried or stored, and seize and impound any and all artwork, screens, film separations, samples, photographs, images, prototypes, computer files, electronic media and templates bearing the picture, image, name, signature, photograph or other indicia of Bob Marley, and deliver the same up to be held by the Plaintiffs pending a further order of this Court;

2.  and that the United States Marshal and/or their designee Abacus Security, and persons acting under their supervision, shall consider as counterfeit all goods in the possession, custody or control of the Defendants which bear or display Bob Marley, or such goods as identified by Plaintiffs' agents;

3.  and that the United States Marshal or their designee Abacus Security be directed to seize the accounting invoices and any written information in connection with the purchase or sale of the counterfeit goods, including but not limited to purchase orders, sales invoices, computer records, computer files, UPS and/or Fedex and or mailing invoices, and the like, and allow Plaintiffs and their attorneys to immediately inspect and copy same;

4.  and that the United States Marshal or their designee Abacus Security, and persons acting under their supervision, shall fully cooperate with Plaintiffs, their attorneys, and agents to the end that representatives of the Plaintiffs accompany the United States Marshal or their designee Abacus Security to identify the counterfeit goods and the above said records. The

6

United States Marshal and/or their designee Abacus Security is directed in particular to seize any counterfeit Bob Marley goods or related records as identified by Plaintiffs or its attorneys or agents at, in or around the following addresses: **71 Green Street, Suite 3, New York, New York, 688 Broadway at the Tower Records Flea Market between West 3rd and West 4th Street, New York, New York, 1 West 28th Street, New York, New York and 870 Broadway, New York, New York,** and any trucks, cars, trailers, boxes, storage boxes, mailboxes, vehicles, booths, store fronts, storage bins, containers, or other storage area at, around or in said premises in which said counterfeit goods, devices to make such goods and records relating thereto are being stored or transported. The United States Marshal and/or their designee Abacus Security is further directed to use all reasonably necessary force to accomplish the foregoing, including the breaking of any locks or other devices being used to secret said merchandise, manufacturing devices or documents.

5.      The United States Marshal and their designee Abacus Security and each ot them is empowered and directed to permit Plaintiffs, their attorneys or agents, if Defendants fail or refuse to identify such records or such records cannot otherwise be located, to search through all records of the Defendants, including on any computers or other related files at the above-said premises' to locate those records relating to the particular counterfeit goods. The United States Marshal and their designee Abacus Security,

and each of them are further directed to use all reasonably necessary force to accomplish the foregoing.

6.    Pursuant to 15 U.S.C. §1116 (d) (10) (A), the Court shall conduct a further hearing on this Order for seizure on _December 11, 2003_ , at _4:00_ _P.m._

7.    As security for the issuance of this Order, the Applicant shall post with this Court a surety bond in the amount of Fifty Thousand ($50,000.00) Dollars, _by 5:00 p.m. on December 2, 2003_

8.    The Plaintiffs specifically agree to indemnify and hold harmless the United States Marshals' Office and/or their designee Abacus Security for any and all claims arising out of this Order.

DONE and ORDERED in chambers at the United States District Courthouse, _December 1, 2003_, this ____ day of _____, ____.

U.S. DISTRICT JUDGE
**Victor Marrero**

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
DIVISION MIAMI 02-23540

C.A. NO.

CIV-JORDAN

FIFTY-SIX HOPE ROAD MUSIC, LTD. )
and ZION ROOTSWEAR LLC., )
    Plaintiffs, )
                 )
                 )
      v. )
                 )
AAA SILK SCREEN CORP., )
DAVID GREENE, Individually and )
as officer, director, employee and )
Shareholder of AAA SILK )
SCREEN CORP., JAMAICAN STYLES, )
and AMERICAN FASHIONS )
    Defendants. )
                 )

MAGISTRATE JUDGE
BROWN



FILED by _____ D.C.

DEC 1 3 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER FOR SEIZURE UNDER 15 U.S.C. 1116 (d) (4)

This cause has come before the Court upon the application of plaintiffs Fifty Six Hope

Road Music Limited and Zion Rootswear, LLC for an ex-parte Order under 15 U.S.C., § 1116

(d) (4) to seize any and all infringing product bearing the name, image, picture, likeness,

signature, trademark, or other indicia of Bob Marley in the care, custody or control of the

defendants, AAA Silk Screen Corp., David Greene, Jamaican Styles and American Fashions,

their agents, servants and employees, and after hearing, being fully advised, the court:

Hereby makes the following findings of fact and conclusions of law pursuant to 15

U.S.C., §1116 (d) (5) (A):

C.A. NO.

1.  Fifty-Six Hope Road, is the holder of federal trademark registration no.2,349,361 for, inter alia, class 25 for tee-shirts and sweatshirts, and is the owner and exclusive licensor of certain rights to publicity in the picture, name, likeness, image, signature and other indicia of the late Bob Marley.

2.  Hope Road has used the Marley Rights in commerce on numerous products, including but not limited to tee shirts, sweatshirts, hats, caps and other general merchandise.

3.  On January 1, 1998, Zion entered into a Licensing Agreement with Hope Road, which grants Zion the world-wide exclusive right to use the Marley Rights on tee shirts, sweatshirts and other general merchandise (hereinafter referred to as the "Licensed Products").

4.  As a result of its marketing and selling tee shirts, both long and short, and other general merchandise, Zion has gained recognition and good will in its trade name "Zion Rootswear" and also its use of the Registered Mark for the image, likeness, name, signature and other indicia of Marley depicted in its products.

5.  Plaintiffs have actively marketed and sold the Licensed Product within numerous geographical territories, including the State of Florida.

6.  The defendants have been manufacturing, distributing and selling tee shirts, sweatshirts and other products bearing and/or depicting the Marley Rights, without a license and the products manufactured and sold by the defendants are substantially similar to Plaintiffs' Licensed Products and they are creating a likelihood of confusion as to the origin and constitute an infringement upon Plaintiffs' rights.

2

7.   On or about November 30, 2002, an agent of Plaintiffs traveled to the Carol Mart 183rd Street Flea Market and observed infringing Marley product being offered for sale at a booth owned, operated and controlled by Jamaican Styles. The infringing shirts were produced to the court for inspection. The Plaintiffs further introduced receipts and a business card from Jamaican Styles.

8.   In addition, the agent of Plaintiffs traveled to the Liberty Flea Market and observed infringing Marley product being offered for sale at a booth owned, operated and controlled by American Fashions. The infringing shirts were produced to the court for inspection. A business card from the Defendant was likewise entered at the hearing.

9.   AAA and David Greene, the Manufacturing Defendants, are in the business of manufacturing and distributing t-shirts. On two prior occasions, the Plaintiffs have confiscated goods manufactured and sold by the Manufacturing Defendants, having seized goods at AAA's manufacturing site and from a booth operated by the Defendant, David Greene, at the Fort Lauderdale Swap Shop in Fort Lauderdale, Florida.

10.  Copies of the U.S. Marshal Property Control Forms in those matters were submitted at the hearing.

11.  The Plaintiffs are familiar with the products manufactured, distributed and sold by the Defendants. Having examined the infringing products purchased at Jamaican Styles and American Fashions and compared them to known samples from AAA and based upon the testimony of Michael Conley, the court finds the designs are offered by Jamaican Styles and American Fashions are more than likely designs

3

C.A. NO.

created, manufactured and sold by the Defendants, AAA and David Greene. The

goods purchased at Jamaican Styles and American Fashions are identical designs

that have been seized from the Defendants David Greene and AAA on two past

occasions.

12.   All of the Defendants' sale, distribution and manufacture of Infringing Products

bearing and/or depicting the Marley Rights constitutes trademark infringement of

the world famous Bob Marley trademark and infringement of the exclusive rights

to publicity.

13.   Prior to the commencement of this action, no agent, servant or employee of the

plaintiffs notified the defendants of the contemplated action to move to obtain an

ex-parte seizure order.

14.   It is likely that without the ex-parte seizure order, the defendants will simply

transfer any infringing product in their possession to third parties, even if the

Court issued an injunction order barring the transfer or sale of these materials.

15.   It is apparent that a seizure order is the only feasible means to protect against the

disappearance of all infringing merchandise in the possession of the defendants.

16.   As a matter of law this Court finds that ex-parte seizure orders to seize infringing

merchandise are expressly permitted under 15 U.S.C., 1116 (d)(4).

17.   Ex-parte seizure orders have been granted by district courts in the past against

individuals and companies passing off infringing merchandise to the public. See,

Fimab-Finanziaria Maglificio v. Helio Import/export, 601 F.Supp. 1 (S.D. Fla.

1983); Fimab-Finanziaria Maglificio v.Kitchen, 548 F.Supp. 248 (S.D. Fla. 1982)

and recently by the United States District Court Southern District of Florida in the

4

C.A. NO.

matters of *Fifty Six Hope Road Music Ltd., et. al. vs. Actibo Sportswear*, C.A. No. 01-1639-CIV-UNGARO-BENAGES; *Fifty Six Hope Road Ltd. vs. Avanti Shoe Corp.*, C.A. No. 01-4523 CIV. SEITZ; and *Fifty Six Hope Road Music Ltd. vs. AAA Silk Screen Corp.*, C.A. No. 02-20909.

18.   The plaintiffs have duly notified the United States Attorney of the proposed ex-parte action against the defendants.

19.   The plaintiffs have represented that prior to the seizure they shall post a security bond in the amount of $25,000 with this Court.

20.   As a matter of law this Court finds that an ex-parte seizure order in this matter is necessary to prevent the transfer of counterfeit goods to unknown third parties. In re Vuitton et fils S.A., 606 F.2d 1 (2d. Cir. 1979).

21.   As a matter of law, I find that the plaintiffs have demonstrated that an order other than an ex-parte seizure order is not adequate to achieve the purposes of Section 1114 of this title;

22.   As a matter of law, I find the applicants have not publicized the requested seizure;

23.   As a matter of law, I find the applicants are likely to succeed in showing that the persons against whom seizure will be ordered have used a counterfeit mark in connection with the sale, offering for sale, and distribution of goods and services;

24.   As a matter of law, I find an immediate and irreparable injury will occur if such seizure is not ordered;

25.   As a matter of law, I find the matter to be seized will be located at the places identified in the application;

5

26.     As a matter of law, I find the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered by granting the application;

27.     As a matter of law, I find the persons against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

Having made the above-identified findings of fact and conclusions of law, the Court hereby ORDERS, ADJUDGES and DECREES that

1.     Upon the Posting of the Security Bond in the amount of $25,000, the United States Marshal for this judicial district, and persons acting under their supervision, shall on December 14, 2002 seize and impound any and all infringing counterfeit Bob Marley goods which the defendants are attempting to sell or are holding for sale, or are otherwise located on the premises including any carton or container in which the counterfeit merchandise is carried or stored, and seize and impound any and all artwork, screens, film separations, samples, prototypes and templates bearing the name, picture, trademark, image, likeness, signature or other indicia of Bob Marley, and deliver the same up to be held by the Plaintiffs pending a further order of this Court;

2.    and that the United States Marshal, and persons acting under his
supervision, shall consider as counterfeit all goods in the possession,
custody or control of the defendants which bear or display Bob Marley, or
such goods as identified by plaintiffs' agents;

3.    and that the United States Marshal be directed to seize the accounting
invoices, check registers, and any written information in connection with
the purchase or sale of the counterfeit goods, including but not limited to
purchase orders, sales invoices, UPS and/or Fedex and or mailing
invoices, logs, notebooks, journals, pads, computer records, computer
files, and the like, and allow plaintiffs and their attorneys to immediately
inspect and copy same;

4.    and that the United States Marshal, and persons acting under his
supervision, shall fully cooperate with plaintiffs, their attorneys, and
agents to the end that representatives of the plaintiffs accompany the
United States Marshal to identify the counterfeit goods and the above said
records. The United States Marshal is directed in particular to seize any
counterfeit Bob Marley goods or related records as identified by plaintiffs
or its attorneys or agents at, in or around the following address: **2731 NW
30th Ave Lauderdale Lake (Fort Lauderdale) Florida; Liberty Flea
Market, 7900 N.W. 27th Ave, Miami, Florida; and Carol Mart (a/k/a
183rd Street Flea Market) 18200 N.W. 27th Ave, Miami, Florida (and
all other suites being utilized by the Defendants)**, and any trucks, cars,
vehicles, booths, store fronts, storage bins, containers, or other storage

7

area at, around or in said premises in which said counterfeit goods are being stored or transported. The United States Marshal is further directed to use all reasonably necessary force to accomplish the foregoing, *including Enforcement*

5.   The United States Marshal is empowered and directed to permit plaintiffs, their attorneys or agents, if defendants fail or refuse to identify such records or such records cannot otherwise be located, to search through all records of the defendants at the above-said premises' to locate those records relating to the particular counterfeit goods and to copy same. The United States Marshal is further directed to use all reasonably necessary force to accomplish the foregoing.

6.   *[struck-through text]* The United States Marshal is empowered to inquire of all persons found to be at or around said premises, at the time of the effectuation of this order, their identity and any such persons shall cooperate with the United States Marshals and shall provide identification upon request.

7.   Pursuant to 15 U.S.C. §1116 (d) (10) (A), the Court shall conduct a further hearing on this Order for seizure on _____ **12-20-02**, at **8:30** a.m.

8.   As security for the issuance of this Order, the Applicant shall post with this Court a surety bond in the amount of twenty five thousand ($25,000) dollars.

9.   The Plaintiffs specifically agree to indemnify and hold harmless the United States Marshals' Office for any and all claims arising out of this Order.

8

C.A. NO.

DONE and ORDERED in chambers at the United States District Courthouse, _Miami, Florida_, this 13th day of _December_, 2002.

_____
U.S. DISTRICT JUDGE

Certified to be a true and
correct copy of the original.
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida

By _____
                    Deputy Clerk

Date _12/13/02_____

9